Trenton & Mercer County Trac. Corp. v. Trenton. *90 N. J. L.*

The case is within the rule of *State* v. *Turner*, 72 *Id.* 404; *State* v. *Rickey*, 10 *Id.* 83.

The objection to the form of the indictment is unsubstantial. It follows that approved by this court in *State* v. *Codington*, 80 *N. J. L.* 496; *affirmed*, 82 *Id.* 728. We do not understand the suggestion of the brief that the question was not squarely discussed in the opinion in that case. We think it enough to aver that the defendant was an officer of the county, having been duly elected chosen freeholder by the qualified electors of the township of Blairstown, and having taken upon himself the said office without specifically averring that he took the oath of office.

The motion is denied. Let the record be remitted for trial to the Quarter Sessions.

---

TRENTON AND MERCER COUNTY TRACTION CORPORATION, PROSECUTOR, v. INHABITANTS OF THE CITY OF TRENTON AND BOARD OF PUBLIC UTILITY COMMISSIONERS, RESPONDENTS.

Argued November 9, 1916—Decided August 1, 1917.

1. Where a traction company seeks to withdraw the sale of six tickets for a quarter and charge a straight five-cent fare, such withdrawal is an increase in rate sufficient to give the public utility commission jurisdiction to pass upon the same under section 17, paragraph "h" of the Public Utility act. *Pamph. L.* 1911, *p.* 380.

2. A resolution, adopted by the board of directors of a traction company, directing its officers to execute, with a municipality, immediately after the passage, by the municipality, of a 'new ordinance which would be less harmful to the company's interest, an agreement, already prepared (a copy of which was set forth in the resolution), providing for a fixed rate of fare to be charged on its lines, and in consequence of which resolution the ordinance in question was passed, constitutes a binding and valid agreement, notwithstanding that the agreement in question was not signed by the officers of the traction company as directed by the resolution.

JUNE TERM, 1917. 379

90 *N. J. L.* Trenton & Mercer County Trac. Corp. v. Trenton.

3. The benefit to the traction company of what was omitted from the ordinance, in the way of drastic provisions inimical to its interests, was a sufficient consideration for the agreement.

4. Whether the mere act of passing the ordinance in pursuance of the agreement would be a sufficient consideration, in a legal sense, *quære*.

On *certiorari*.

Before Justices SWAYZE, MINTURN and KALISCH.

For the prosecutor, *Frank S. Katzenbach, Jr.* (*Edward M. Hunt* on the brief).

For the city of Trenton, *George L. Record* (*Charles E. Bird* on the brief).

For the board of public utility commissioners, *Frank H. Sommer*.

The opinion of the court was delivered by

SWAYZE, J. Although the voluminous record in this case has necessarily required a long time to examine, the decision may well be rested on a single point and that within narrow compass. The prosecutor seeks to set aside an order forbidding it to put into effect a proposed withdrawal of the sale of six tickets for twenty-five cents on street railways operated by it. These railways are three in number—the Trenton Street Railway Company, the Mercer County Traction Company and the Trenton, Hamilton and Ewing Traction Company. They are operated under leases and agreements of October 15th, 1910. The two latter had been leased prior to 1909 to the first named for nine hundred and ninety-nine years.

We think it clear that the public utility commission had jurisdiction under section 17, paragraph "h" of the act. *Pamph. L.* 1911, *p.* 380. The withdrawal of the sale of six tickets for a quarter was an increase of an existing rate under which eighty-two per cent. of the passengers carried paid a

fare of only four and one-sixth cents; by the proposed withdrawal they would be forced to pay a fare of five cents.

We find it unnecessary to pass upon the question whether the original ordinances and their acceptance amounted to a contract by which the companies were authorized to charge as much as five cents, or whether they amounted only to a limitation by which the companies were forbidden to charge more than five cents. It is likewise unnecessary, in our view, to consider whether a fare of four and one-sixth cents is reasonable, in view of present conditions and the situation of the company. We find that in 1909 a new contract was made between the city and the company which requires the company to sell six tickets for twenty-five cents upon all cars operated in the city of Trenton. The facts are as follows: For many years tickets had been sold at that rate. In 1909, the street railway company proposed to stop the sale. Naturally, great public interest was aroused, threats were made of attacks upon the franchises of the company and the city authorities were preparing for such an attack and for amendments of the ordinances. An agreement was reached by negotiation, and on October 4th, 1909, the Trenton Street Railway Company adopted a resolution waiving its right to notice of alterations in the ordinances, and directing its officers to execute an agreement already prepared (a copy of which was set forth), immediately after the passage of a new ordinance, a draft of which had been submitted by the city counsel to the railway company. This ordinance provided for the sale of tickets at the old rate by the company upon all cars operated in the city of Trenton. The ordinance was passed by the common council on October 19th and approved by the mayor on October 22d, eighteen days after the resolution of the railway company. Had the agreement been signed by the officers of the company, as directed by the resolution of October 4th, on the faith of which the city passed the ordinance, no question could have arisen. Instead of that, the company, after the passage of the ordinance, rescinded the resolution because, as the rescinding resolution states, it was falsely recited therein that the city had reserved the right to

JUNE TERM, 1917. 381

*90 N. J. L.* Trenton & Mercer County Trac. Corp. v. Trenton.

alter the ordinances whenever in the judgment of the common council it became necessary for the public good. It is a little difficult to understand upon what theory it is supposed the false recital vitiates the action of the company. It is not charged that the city did anything to mislead the company in this respect; it could not have done so since the ordinances were necessarily as well known to the company as to the city; and the proposed written form of contract, submitted by the city counsel, recited what was the exact truth that the right of alteration or amendment was reserved "by the several ordinances aforesaid, or some of them." The addition of the qualifying words was enough to call the attention of the company to the existence of a question as to the extent of the city's right. With this draft before them, the directors chose to put a broader statement in the recitals of their own resolution. Manifestly, they ought not to be permitted for their own mistake to withdraw from the agreement after the city had acted thereon.

It is argued that the parties did not intend that there should be a complete contract until the written agreement was executed. The case, it is said, is within the rule of *Water Commissioners of Jersey City* v. *Brown,* 32 *N. J. L.* 504, decided by the Court of Errors and Appeals in 1866, and applied by the Supreme Court in *Donnelly* v. *Currie Hardware Co.,* 66 *Id.* 388. These cases are not applicable. In the first the water commissioners directed that their engineer and attorney should prepare a contract and submit the same for approval by the board before being executed. The court said that several particulars, as to the time of finishing the work, as to the manner of doing it, and as to the guarantee of its permanence, remained to be settled. The second case was decided upon the ground that there had been no agreement as to the time allowed for beginning and completing the work and the mode of payment, matters which are generally provided for in such arrangements. As Lord Cranworth said, in *Ridgeway* v. *Wharton,* 6 *H. L. Cas.* 238 (at *p.* 268), the fact "that the parties do intend a subsequent agreement to be made, is strong evidence to show that they did not intend the pre-

vious negotiations to amount to an agreement;" but at the same time he protested against its being supposed because persons wish to have a formal agreement drawn up that therefore they cannot be bound by a previous agreement if it is clear that such an agreement had been made; and he expressed his approval of Sir William Grant's decision in the leading case of *Fowle* v. *Freeman,* 9 *Ves.* 351. In *Wharton* v. *Stoutenburgh,* 35 *N. J. Eq.* 266, it was held that a final agreement had been reached, although the parties intended that a lease embodying the agreement should be executed. The applicability of that case to the present is not weakened by the fact that a written memorandum would have been there necessary to satisfy the statute of frauds, if the vendee had not taken possession. The taking possession did not supply the terms of the lease, and before decreeing that the lease should be executed, it was necessary for the court to find that a final agreement had been previously reached, and that the execution of the lease was necessary only by way of part performance of the agreement, and not as a condition precedent to the existence of a final agreement. The facts of the present case bring it within the rule of *Wharton* v. *Stoutenburgh.* The draft agreement had been submitted by the city to the company; the company had assented to its terms; all that remained was for the executive officers to execute the written instrument in which the terms of the agreement were set forth; but the officers had no power to vary the terms, and it was not contemplated that the directors should again pass on the matter. The case is, as if, in *Water Commissioners of Jersey City* v. *Brown,* the agreement had been already prepared and adopted by the water commissioners.

There was sufficient legal consideration for the agreement by the company. It is true the ordinance did not affirmatively concede any benefit to the company; on its face it was rather a detriment; but that is too narrow a view to take. The situation was that the company was liable to attack and the ordinances might be altered or amended in such a way as to be very harmful or at least productive of long and expensive litigation. What the company secured was the adoption

of an ordinance which contained no such drastic changes; the benefit to the company was in what the ordinance omitted, not in what it contained. In saying this, we are not to be understood as suggesting that the mere act of passing the ordinance in pursuance of the agreement would not be a sufficient consideration in a legal sense.

We think there was a valid contract requiring the company to sell six tickets for a quarter, and hence the public utility commissioners might well conclude that such a rate was just and reasonable under the circumstances of the case.

It is said, however, that the Mercer County Traction Company and the Trenton and Hamilton and Ewing Traction Company could not be affected by the ordinance because no official action was taken by either with reference to its terms. This argument overlooks the fact that both those companies were at the time under lease to the Trenton Street Railway Company for a term of which more than nine hundred and ninety years were still to come. The probability of the two lessor companies being affected prejudicially by the ordinance is negligible.

The order is affirmed, with costs.